IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:20-CV-190-D

TAMMY PRISELAC, individually and )
on behalf of all others similarly situated, )
)
Plaintiff, )
)
v. ) **ORDER**
)
THE CHEMOURS COMPANY, et al., )
)
Defendants. )

On September 15, 2020, Tammy Priselac ("Priselac" or "plaintiff"), individually and on behalf of all others similarly situated, filed a putative class action in Bladen County Superior Court against The Chemours Company ("Chemours"), The Chemours Company FC, LLC ("Chemours FC"), E.I. DuPont de Nemours and Company, Inc. ("DuPont"), E.I. duPont Chemical Corporation ("DuPont Chemical"), Corteva, Inc., and DuPont de Nemours, Inc. (collectively, the "corporate defendants"), and Ellis H. McGaughy ("McGaughy"), Brian D. Long ("Long"), and Michael E. Johnson ("Johnson") (collectively, the "managing defendants") (altogether, "defendants"). See Compl. [D.E. 1-1] 12–83. On October 6, 2020, defendants jointly and timely removed the action to this court based on diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") [D.E. 1]. On October 13, 2020, defendants moved to dismiss for failure to state a claim [D.E. 13] and filed a memorandum in support [D.E. 14]. On November 25, 2020, Priselac moved to remand the action to state court [D.E. 27] and filed a memorandum in support [D.E. 28]. On December 30, 2020, defendants responded in opposition [D.E. 29–30]. On February 8, 2021, Priselac replied [D.E. 37]. As explained below, the court denies Priselac's motion to remand.

I.

The action concerns the alleged release of toxic chemicals from the Fayetteville Works Site. The Fayetteville Works Site is located southeast of Fayetteville, North Carolina, and includes offices, manufacturing facilities, piping, storage, waste, and treatment facilities. See Compl. ¶ 22. Priselac alleges that Chemours, Chemours FC, DuPont, and DuPont Chemical have long made or used various perfluorinated chemicals ("PFCs") at the Fayetteville Works Site. See id. ¶ 25. From the 1970s through approximately June 2015, DuPont and DuPont Chemical owned and operated the Fayetteville Works Site. See id. ¶ 22. Chemours and Chemours FC currently own and operate the Fayetteville Works Site and manufacture at least three PFCs there. See id. ¶¶ 22–23. PFCs cause various cancers, thyroid disease, ulcerative colitis, pregnancy-induced hypertension, and other ailments in humans. See id. ¶¶ 32, 44, 50, 52, 103–24, 171–79.

Priselac is a North Carolina resident. See id. ¶ 2. Priselac consumed household water supplied by the Cape Fear Public Utility Authority ("CFPUA") through water from the Cape Fear River for approximately a decade. See id. Priselac brings this action on behalf of "[a]ll persons who have occupied and resided in residential properties in the geographic area served by CFPUA water from a Cape Fear River Source for a cumulative time period of one year or more and consumed household water for a cumulative time period of one year or more." Id. ¶ 181.

The corporate defendants are all corporations organized under Delaware law with principal places of business in Wilmington, Delaware. See id. ¶¶ 3–8. The managing defendants are all North Carolina citizens. See id. ¶¶ 9, 11, 13. McGaughy worked as the site manager for the Fayetteville Works Site from 2010 until he retired. See id. ¶¶ 9–10. Long became the site manager beginning in February 2018. See id. ¶ 13. Johnson worked as the environmental manager for the Fayetteville Works Site from June 1978 to July 2018. See id. ¶¶ 11–12.

2

Priselac asserts claims under North Carolina law for trespass to real property, private nuisance, negligence, negligent failure to warn, violation of the North Carolina Uniform Voidable Transfer Act ("NCUVTA"), unjust enrichment, civil conspiracy, and battery. See id. ¶¶ 196–266. Priselac seeks class certification, damages, and medical monitoring. See id. at 82–83.

II.

"[F]ederal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations." Strawn v. AT & T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008); see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Removal from state court is proper only if the federal district court has original jurisdiction over the removed action. See 28 U.S.C. § 1441(a); Lontz v.Tharp, 413 F.3d 435, 439 (4th Cir. 2005). If the federal court lacks subject-matter jurisdiction, it must remand the action to state court. See 28 U.S.C. § 1447(c).

A.

Congress "enacted CAFA to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts." Jackson v. Home Depot U.S.A., Inc., 880 F.3d 165, 168 (4th Cir. 2018) (quotation omitted), aff'd, 139 S. Ct. 1743 (2019). CAFA grants the district court original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); see Quicken Loans Inc. v. Alig, 737 F.3d 960, 964 (4th Cir. 2013). Section 1332(d)(2)(A) of CAFA requires: (1) minimal diversity; (2) an amount in controversy greater than $5,000,000; and (3) a class action with at least 100 members. See id.; 28 U.S.C. § 1332(d)(5)(B); Dart Cherokee Basin Operating Co. v.

3

Owens, 574 U.S. 81, 84–85 (2014); Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161, 165–66 (2014); Quicken Loans, 737 F.3d at 964; West Virginia ex rel. McGraw v. CVS Pharmacy, Inc., 646 F.3d 169, 174 (4th Cir. 2011); Lanier v. Norfolk S. Corp., 256 F. App'x 629, 631–32 (4th Cir. 2007) (per curiam) (unpublished). "When the foregoing three criteria . . . are satisfied, a defendant sued in a class action in a state court is presumptively entitled to remove the proceedings to federal court." Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys., 928 F.3d 325, 330 (4th Cir. 2019); see 28 U.S.C. § 1453(b). "Under CAFA, the removing party bears the burden of establishing federal jurisdiction over a class action." Dominion Energy, 928 F.3d at 335–36; see Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC, 880 F.3d 668, 681 (4th Cir. 2018); AU Optronics Corp. v. South Carolina, 699 F.3d 385, 390 (4th Cir. 2012); Strawn, 530 F.3d at 298.

Priselac contends that defendants fail to show that removal is proper under CAFA. See [D.E. 28] 2. The court rejects Priselac's argument. First, "minimal diversity" exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A) (emphases added). Priselac is a citizen of North Carolina. See Compl. ¶ 2. The corporate defendants are incorporated in Delaware and have their principal places of business in Delaware. See id. ¶¶ 3–8. Thus, the corporate defendants are citizens of a different state than Priselac, and the parties are minimally diverse.

Second, the putative class must contain at least 100 members. See 28 U.S.C. §§ 1332(d)(2), (5)(B). Priselac brings the action on behalf of herself and a putative class of North Carolina residents "served by CFPUA water from a Cape Fear River Source for a cumulative time period of one year or more and consumed household water for a cumulative time period of one year or more." Compl. ¶ 181. Priselac alleges that the "number of owned properties exceeds five thousand" and that "[t]here are well over one thousand members of the Class who have been exposed" to PFCs from

4

the Fayetteville Works Site. Id. ¶ 183. Thus, the action involves a putative class of at least 100 members.

Third, the amount in controversy must exceed $5 million in the aggregate, exclusive of interests and costs. See 28 U.S.C. §§ 1332(d)(2), (6). "[W]here the complaint does not specify the amount in controversy, . . . the removing party must prove the jurisdictional amount by a preponderance of the evidence." Anthony v. Serv. Corp. Int'l, No. 3:10CV642-RJC-DSC, 2011 WL 1343195, at *3 (W.D.N.C. Mar. 18, 2011) (unpublished), report and recommendation adopted, 2011 WL 1343159 (W.D.N.C. Apr. 8, 2011) (unpublished); see Hardig v. Certainteed Corp., No. 3:11CV535, 2012 WL 423512, at *1 (W.D.N.C. Feb. 9, 2012) (unpublished). "In determining whether the amount in controversy exceeds the $5 million jurisdictional threshold, the appropriate measure is not the amount of damages Plaintiffs will ultimately recover, but rather the alleged amount in controversy." Hardig, 2012 WL 423512, at *1 ; see Lanier, 256 F. App'x at 631–32. To determine the amount in controversy, the court examines the complaint at the time of removal. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 291–92 (1938), superseded on other grounds by statute; Brooks v. GAF Materials Corp., 532 F. Supp. 2d 779, 781 (D.S.C. 2008). "When the amount of damages a plaintiff seeks is unclear, the court may look at the entire record, including the complaint, the removal petition and affidavits and make an independent evaluation as to whether or not the jurisdictional amount is in issue." Anthony, 2011 WL 1343195, at *3; see Dash v. FirstPlus Home Loan Tr. 1996-2, 248 F. Supp. 2d 489, 498–99 (M.D.N.C. 2003). The court may also consider damages amounts in similar cases. See, e.g., Anthony, 2011 WL 1343195, at *3–4.

Priselac seeks compensatory damages, "an award for disgorgement of the profits and savings which were obtained by the unjust enrichment of Defendants at the expense of Plaintiff and Class Members," punitive damages, "the reasonably necessary costs of diagnostic testing for the early

5

detection of disease," and "an award of interest, costs, and attorney fees." Compl. at 82–83. Priselac, however, does not specify a dollar amount for any category of damages. Priselac alleges that defendants contaminated class members' properties, household water, water systems, and structures. See id. ¶ 173. Priselac also alleges that class members' exposure to toxic substances resulted in "the cost of diagnostic testing for the early detection of such illness, disease or disease process." Id. ¶ 174. A similar class action pending in this court alleges damages in excess of $5 million, exclusive of interest and costs. See Am Compl. ¶ 7, Nix v. E.I. DuPont de Nemours & Co., No. 7:17-CV-189-D (E.D.N.C. Aug. 30, 2019) [hereinafter Nix Compl.].

Defendants contend that this action's similarity to Nix, and the breadth of the damages sought and size of the putative class, show that at the time of removal, the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. See [D.E. 1] ¶¶ 36–38. The court agrees. Defendants have shown by a preponderance of the evidence that the amount in controversy exceeds $5 million, satisfying the third CAFA requirement. Cf. Compl. ¶¶ 29–39. Accordingly, defendants have established the three elements of CAFA jurisdiction. Defendants properly removed the action to federal court.

B.

The burden shifts to Priselac to show that the court should remand the action to state court under a CAFA exception. See Dominion Energy, 928 F.3d at 336; Bartels, 880 F.3d at 681 (collecting cases); Eakins v. Pella Corp., 455 F. Supp. 2d 450, 452 (E.D.N.C. 2006). "[T]he party seeking to remand under an exception to CAFA bears the burden of establishing each element of the exception by a preponderance of the evidence." Mason v. Lockwood, Andrews & Newnam, P.C., 842 F.3d 383, 388–89 (6th Cir. 2016) (collecting cases). "Any doubt about the applicability of [an] exception is resolved against the party seeking remand." Hood v. Gilster-Mary Lee Corp., 785 F.3d

6

263, 265 (8th Cir. 2015); see Davenport v. Lockwood, Andrews & Newnam, Inc., 854 F.3d 905, 910 (6th Cir. 2017); Dutcher v. Matheson, 840 F.3d 1183, 1190 (10th Cir. 2016).

Priselac seeks remand under CAFA's local controversy exception. See [D.E. 27] ¶¶ 3–12. Under CAFA's local controversy exception, a district court shall decline to exercise jurisdiction over a class action in which:

> (1) more than two-thirds of the class members are citizens of the state where the action is filed; (2) plaintiffs seek "significant relief" from at least one local defendant who is a citizen of the state and whose alleged conduct forms a "significant basis" for the claims asserted; (3) the "principal injuries" were incurred in the state; and (4) no other class action "has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons" in the three years prior.

Dutcher, 840 F.3d at 1190–91 (quoting 28 U.S.C. § 1332(d)(4)(A)); see Quicken Loans, 737 F.3d at 964. A controversy is not "local" where "the alleged conduct of primarily out-of-state defendants [] caused plaintiffs' injuries" and the action "will have long-lasting implications for interstate commerce and will be felt far beyond the [local] region." Davenport, 854 F.3d at 910.

Priselac must establish all four elements of the local controversy exception by a preponderance of the evidence. See Mason, 842 F.3d at 388–89. Defendants do not contest that more than two-thirds of the putative class members are North Carolina citizens who suffered their alleged principal injuries in North Carolina. See [D.E. 29] 3; cf. [D.E. 27] ¶¶ 4, 11; [D.E. 28] 3–5, 15–16. Thus, the court analyzes (1) whether a class action was filed "asserting the same or similar factual allegations against any of the defendants" in the three years before the present action, and (2) whether plaintiffs seek "significant relief" from at least one defendant who is a North Carolina citizen and whose conduct "forms a significant basis for the claims asserted." Dutcher, 840 F.3d at 1190–91; see 28 U.S.C. § 1332(d)(4)(A).

7

1.

In order to satisfy CAFA's local controversy exception, Priselac must prove that "no other class action has been filed asserting the same or similar factual allegations against any of the defendants" in the preceding three years. 28 U.S.C. § 1332(d)(4)(A)(ii).[1] Priselac argues that Nix does not meet this standard, largely because Nix does not seek medical monitoring. See [D.E. 27] ¶ 12; [D.E. 28] 16–18. Defendants disagree. See [D.E. 29] 3–7; see also [D.E. 1] ¶ 40(a)(v).[2]

The court must determine "whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of actions were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects)." S. Rep. No. 109-14, at 41 (2005); see McAteer v. DCH Reg'l Med. Ctr., No. 2:17-cv-00859-MHH, 2018 WL 1089873, at *6 (N.D. Ala. Feb. 26, 2018) (unpublished) ("CAFA does not require common questions o[f] law or fact . . . . [or] identical parties."); Carter, 260 F. Supp. 3d at 284. The inquiry focuses on whether the class actions assert the same or similar factual allegations, not whether they assert the same or similar causes of action. See Dutcher, 840 F.3d at 1191–92; McAteer, 2018 WL 1089873, at *6; cf. Davenport, 854 F.3d at 909; Rasberry v. Capitol Cnty. Mut. Fire Ins. Co., 609 F. Supp. 2d 594, 605 (E.D. Tex. 2009).[3]

---

[1] Congress enacted this requirement "to prevent plaintiffs from using the local controversy exception to avoid federal jurisdiction, remand cases to state courts, and bring 'copycat' class actions in various states across the country." Carter v. CIOX Health, LLC, 260 F. Supp. 3d 277, 285 (W.D.N.Y. 2017); see Davenport, 854 F.3d at 910; Vodenichar v. Halcón Energy Props., Inc., 733 F.3d 497, 508 (3d Cir. 2013).

[2] The two actions were filed within three years of each other. Nix was filed on October 3, 2017. See Compl., Nix, No. 7:17-CV-189-D (E.D.N.C. Oct. 3, 2017) [D.E. 1]. Priselac filed this action on September 15, 2020. See [D.E. 1-1].

[3] "Other class action" includes class actions filed in the same state as the present action. See Dernoshek v. FirstService Residential, Inc., No. 1:21-CV-56, 2021 WL 1060208, at *4 (M.D.N.C.

To satisfy this element, the complaints must contain similar, not identical, factual allegations. See Dernoshek, 2021 WL 1060208, at *4; Carter, 260 F. Supp. 3d at 284; S. Rep. No. 109-14, at 41. "[C]ourts should not employ [the local controversy] exception when the essential contours of claims and factual averments in multiple class actions are substantially the same or overlapping notwithstanding some identifiable differences." Rasberry, 609 F. Supp. 2d at 605. Alleging "the same acts of wrongdoing by the same defendant" suffices. Dutcher, 840 F.3d at 1191; see, e.g., Davenport, 854 F.3d at 909 (concluding that five class actions arising from the Flint water crisis "advancing very similar factual allegations of negligence, intentional and negligent infliction of emotional distress, and unjust enrichment" presented similar factual allegations).

In contrast, a prior action lacks similar factual allegations where "[t]he proof necessary to prevail [in the prior action] differs in all crucial respects from the proof necessary to prevail [o]n behalf of the proposed class in this action." Rasberry, 609 F. Supp. 2d at 605; see Anderson v. Hackett, 646 F. Supp. 2d 1041, 1050–51 (S.D. Ill. 2009). Two actions arising from the same set of facts lack similar factual allegations where the objects of the suits are "analytically distinct." Rasberry, 609 F. Supp. 2d at 605 (two actions stemming from Hurricane Rita lacked similar factual allegations because one action challenged the county's failure to pay contractor overhead and profit and sought monetary relief, while the other challenged the county's use of unlicensed adjusters and sought only declaratory and injunctive relief); see also Anderson, 636 F. Supp. 2d at 1050–51 (two actions concerning the release of PCBs into the environment lacked similar factual allegations where the actions arose in different locales, and one action challenged the production and distribution of products containing PCBs, while the other challenged defendants' failure to discover and inform

Mar. 19, 2021) (unpublished); Carter, 260 F. Supp. 2d at 286–87.

9

users of the dangers of PCBs).

Nix contains similar factual allegations. Both complaints concern DuPont and Chemours allegedly releasing toxic chemicals from the Fayetteville Works Site. Compare Compl. with Nix Compl. Both allege that DuPont and Chemours discovered the harmful effects of PFCs but continued to use and discharge PFCs. Compare Compl. ¶¶ 26–54, 103–24 with Nix Compl. ¶¶ 19–83. Specifically, both complaints allege that DuPont discharged PFCs from the Fayetteville Works Site while concealing such actions from regulators. Compare Compl. ¶¶ 16–19, 30–54, 74–102, 125–68 with Nix Compl. ¶¶ 26–115. The complaints allege that PFCs cause various cancers, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension. Compare Compl. ¶¶ 32, 44, 50, 52, 103–24, 171–79 with Nix Compl. ¶¶ 1–2, 21, 118–30. Both complaints also allege claims for negligence, unjust enrichment, trespass, and nuisance. Compare Compl. ¶¶ 196–266 with Nix Compl. ¶¶ 136–85.

The allegations in this case and in Nix, while not identical, concern the same alleged wrongdoing by the same defendants: that DuPont and Chemours negligently and possibly knowingly released PFCs, which then entered local drinking water. The "proof necessary to prevail" largely overlaps, as plaintiffs will need to show that DuPont and Chemours discharged toxic chemicals into the same environment, harming residents and their property. As in Davenport, the class actions assert mostly the same claims and arise from the same water crisis. See Davenport, 854 F.3d at 909.

Defendants contend that the Nix class definition fully encompasses the putative class alleged here, supporting a finding of similar factual allegations. See [D.E. 29] 5–6. Priselac responds that class differences defeat factual similarity. See [D.E. 37] 2–4.

Complaints may contain similar factual allegations without their purported classes being the same or even overlapping in significant respects. See S. Rep. No. 109-14, at 41; McAteer, 2018 WL

10

1089873, at *6; cf. Landry-Boudreaux v. Progressive Waste Sols. of LA, Inc., 365 F. Supp. 3d 734, 738 (E.D. La. 2019) (finding similar factual allegations, in part, because two actions presented "nearly identical" class definitions); Thompson v. La. Reg'l Landfill Co., 365 F. Supp. 3d 725, 732 (E.D. La. 2019) (same). Overlap in the class definitions may support factually similar allegations, but such overlap is unnecessary. Conversely, differences in the class definitions do not undermine factually similar allegations. Accordingly, similarities or differences between the Nix classes and the classes alleged here do not materially affect whether the plaintiffs in the two cases make similar factual allegations.

Priselac argues that the plaintiffs in Nix do not assert similar factual allegations because Nix does not seek to hold the managing defendants liable. See [D.E. 27] ¶ 12; [D.E. 28] 18. The local controversy exception, however, applies only where "no other class action has been filed ... against any of the defendants," 28 U.S.C. § 1332(d)(4)(A)(ii) (emphasis added), not all of the defendants. Thus, Priselac's argument fails.

Priselac also contends that the plaintiffs in Nix do not present similar factual allegations because they do not seek medical monitoring or assert claims for battery or a NCUVTA violation. See [D.E. 27] ¶ 12; [D.E. 28] 16–18. Defendants respond that similar factual allegations do not require identical legal theories of recovery and note that Nix does not include a claim for medical monitoring because the court dismissed the claim. See [D.E. 29] 6–7. Priselac replies that the present case does not assert claims for harms to property ownership, while Nix does. See [D.E. 37] 3. Priselac also notes that the plaintiffs in Nix seek an injunction, while Priselac does not. See id. Whether the actions assert the same or different causes of action is immaterial, so long as the actions include similar factual allegations. See Dutcher, 840 F.3d at 1191–92; McAteer, 2018 WL 1089873, at *6. Thus, Priselac's arguments fail.

11

Priselac has failed to prove that Nix and the present action do not assert similar factual allegations. Thus, Priselac has failed to demonstrate that "no other class action has been filed asserting the same or similar factual allegations against any of the defendants" in the preceding three years. 28 U.S.C. § 1332(d)(4)(A)(ii).

2.

CAFA's local controversy exception also requires at least one forum-state defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." Id. § 1332(d)(4)(A)(i)(II). "[T]he local defendant must be a primary focus of the plaintiffs' claims—not just a peripheral defendant. The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership), as well as being a defendant whose alleged conduct forms a significant basis for the claims asserted by the class." S. Rep. No. 109-14, at 40; see Eakins, 455 F. Supp. 2d at 452.

The three managing defendants are North Carolina citizens. See Compl. ¶¶ 9, 11, 13. Thus, the court focuses on whether Priselac seeks "significant relief" from the managing defendants and whether the managing defendants' conduct forms a "significant basis" for the putative class's claims.

Priselac contends that the putative class seeks "significant relief" from the managing defendants because she names these defendants in claims for trespass, private nuisance, negligence, negligent failure to warn, and battery. See [D.E. 27] ¶¶ 5–6; [D.E. 28] 5–7. Priselac contends that the likelihood of recovering from the managing defendants has no bearing on the significant relief requirement. See [D.E. 28] 5–7; see also [D.E. 37] 5–6. Defendants respond that Priselac does not seek "significant relief" from the managing defendants because she seeks most of her relief from the out-of-state corporate defendants. See [D.E. 29] 8–9. Priselac replies that the court cannot make assumptions about the managing defendants' ability to pay. See [D.E. 37] 5.

12

"[T]he 'significant relief' requirement has been interpreted to mean those defendants from whom plaintiffs seek most of the relief." Laws v. Priority Tr. Servs. of N.C., L.L.C., No. 3:08-CV-103, 2008 WL 3539512, at *5 (W.D.N.C. Aug. 11, 2008) (unpublished); see Craft v. S.C. State Plastering, LLC, CV No. 9:15-5080, 2016 WL 11608327, at *5 (D.S.C. Sept. 8, 2016) (unpublished); Est. of Hanna v. Agape Senior, LLC, No. 3:12-cv-02872-JFA, 2015 WL 247906, at *3–5 (D.S.C. Jan. 20, 2015) (unpublished); Carter v. Allstate Ins. Co., No. 5:12-CV-72, 2012 WL 3637239, at *9–10 (N.D. W. Va. Aug. 21, 2012) (unpublished); see also Evans v. Walter Indus., 449 F.3d 1159, 1167 (11th Cir. 2006); Robinson v. Cheetah Transp., No. Civ.A. 06-0005, 2006 WL 468820, at *3–4 (W.D. La. Feb. 27, 2006) (unpublished), report and recommendation adopted, 2006 WL 1453036 (W.D. La. May 17, 2006) (unpublished). The inquiry requires a comparative analysis that "includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment." Evans, 449 F.3d at 1167 (quotation omitted); see Anderson, 646 F. Supp. 2d at 1048–49; Robinson, 2006 WL 468820, at *3. Under CAFA, where the complaint shows that the putative class seeks significantly more relief from an out-of-state defendant than a local defendant, the class does not seek "significant relief" from the local defendant. See Coleman v. Estes Express Lines, Inc., 631 F.3d 1010, 1019–20 (9th Cir. 2011); Moore v. SCROLL COMPRESSORS, LLC, No. 14-03109-CV-S-GAF, 2014 WL 12597511, at *7 (W.D. Mo. July 8, 2014) (unpublished) (collecting cases); City of O'Fallon v. CenturyLink, Inc., 930 F. Supp. 2d 1035, 1049–51 (E.D. Mo. 2013). The inquiry focuses on whether the class seeks significant relief from the local defendant, not whether the class may obtain significant relief. See Walsh v. Defs., Inc., 894 F.3d 583, 591–92 (3d Cir. 2018); Coleman, 631 F.3d at 1015, 1020; Coffey v. Freeport McMoran Copper & Gold, 581 F.3d 1240, 1245 (10th Cir. 2009); McMullen v. Synchrony Bank,

13

82 F. Supp. 3d 133, 143 (D.D.C. 2015); cf. Cheetah, 2006 WL 468820, at *4.

The putative class does not seek "significant relief" from the managing defendants. Judicial experience, common sense, and the face of the complaint tell the court that the putative class seeks most of its relief from the corporate defendants, who have significantly more assets than three individuals. See Coleman, 631 F.3d at 1019–20 (arguing "any experienced lawyer or judge reading the complaint would have known that 'significant relief' was not being sought against the [local defendant]" when the local defendant was a truck driver and the other defendants were large corporations). Moreover, the complaint does not explicitly state that the class seeks to hold the defendants jointly and severally liable. Cf. Smith v. Marcus & Millichap, Inc., 991 F.3d 1145, 1160 (11th Cir. 2021). Here, the putative class does not seek "significant relief" from the managing defendants.

In opposition, Priselac contends that the managing defendants' conduct forms a "significant basis" for the putative class's claims because the managing defendants oversaw the continued release of toxic chemicals from the Fayetteville Works Site. See [D.E. 27] ¶¶ 7–9; [D.E. 28] 7–15. Defendants disagree. See [D.E. 29] 9–11; see also [D.E. 1] ¶¶ 40(a)(ii)–(iv). Defendants contend that Priselac's allegations against the managing defendants pale in comparison to those against the corporate defendants. See [D.E. 29] 10–11.

The "significant basis" prong requires "at least one local defendant whose alleged conduct forms a significant basis for all the claims asserted in the action." Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 155 (3d Cir. 2009) (emphasis added); see Craft, 2016 WL 11608327, at *5 (applying Kaufman); Est. of Hanna, 2015 WL 247906, at *5–6 (same); Carter, 2012 WL 3637239, at *9–10 (same). "In relating the local defendant's alleged conduct to all the claims asserted in the action, the significant basis provision effectively calls for comparing the local defendant's alleged conduct to

14

the alleged conduct of all the [d]efendants." Kaufman, 561 F.3d at 156. "[T]he local defendant's alleged conduct must be an important ground for the asserted claims in view of the alleged conduct of all the [d]efendants." Id. at 157 (emphasis in original).[4] The Senate Report illustrates: "For example, in a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit [the 'significant basis'] criteri[on].... At most, that agent would have been an isolated role player in the alleged scheme implemented by the insurance company." S. Rep. No. 109-14, at 40.

The managing defendants' conduct does not form a "significant basis" for all of the claims. The managing defendants did not engage in "conduct form[ing] a significant basis for all the claims asserted in the action." Kaufman, 561 F.3d at 155 (emphasis added). The complaint only names the managing defendants in five counts, but it names some iteration of the corporate defendants in all nine counts. See Compl. ¶¶ 196–266; see also Carter, 2012 WL 3637239, at *10 (holding based on Kaufman that the local controversy exception did not apply because the local defendant's conduct did not form a "significant basis" for all of the claims).

---

[4] Kaufman lists several factors the court may consider in evaluating whether a defendant's conduct forms a "significant basis," including:

1) the relative importance of each of the claims to the action; 2) the nature of the claims and issues raised against the local defendant; 3) the nature of the claims and issues raised against all the [d]efendants; 4) the number of claims that rely on the local defendant's alleged conduct; 5) the number of claims asserted; 6) the identity of the [d]efendants; 7) whether the [d]efendants are related; 8) the number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct; and 9) the approximate number of members in the putative classes.

Kaufman, 561 F.3d at 157 n.13; see, e.g., Est. of Hanna, 2015 WL 247906, at *5–6 (considering factors one, four, five, and seven).

15

More broadly, the managing defendants' conduct pales in comparison to that of the corporate defendants. The managing defendants operated the Fayetteville Works Site. Priselac alleges that the managing defendants knew they released toxic chemicals, knew the chemicals caused harm, and misrepresented the site's activities to state regulators. See Compl. ¶¶ 9–19, 48, 77–78, 84–88, 97–101, 138, 151, 162–70. However, the managing defendants acted within the scope of their employment with the corporate defendants. See id. ¶ 19. As employers, the corporate defendants oversaw and engaged in the same conduct. The corporate defendants allegedly possessed decades of knowledge and research concerning the harms of such chemicals, yet they still produced and discharged these chemicals in North Carolina and other locations. See id. ¶¶ 25–124, 131–70. By alleging civil conspiracy against the corporate defendants, Priselac suggests the corporate defendants played a larger role than the managing defendants. See id. ¶¶ 251–56. Here, the managing defendants are "isolated role player[s] in the alleged scheme implemented by" the corporate defendants. S. Rep. No. 109-14, at 40; see also Casey v. Int'l Paper Co., No. 3:07cv421/RV/MD, 2008 WL 8854569, at *7 (N.D. Fla. Jan. 7, 2008) (unpublished) (holding that an environmental manager's conduct did not form a "significant basis" for claims concerning a mill that released particulate matter).

The Kaufman factors also demonstrate that the local defendants' conduct does not form a "significant basis" for the claims. See Kaufman, 561 F.3d at 157 n.13; cf. Est. of Hanna, 2015 WL 247906, at *5–6. Priselac raises claims for trespass to real property, private nuisance, negligence, negligent failure to warn, and battery against the managing defendants, but raises broader claims of civil conspiracy and unjust enrichment against the corporate defendants (factors two and three). See Compl. ¶¶ 196–266. Priselac alleges five claims against the managing defendants, but raises all nine claims against some combination of the corporate defendants (factors four and five). See id.

16

Although the managing defendants are related to each other and to the corporate defendants, they are employed by the corporate defendants (factors six and seven). See id. ¶¶ 9–19. Thus, Priselac has failed to demonstrate that at least one forum-state defendant's alleged conduct forms a significant basis for the proposed class claims. Accordingly, CAFA's local controversy exception does not apply.

C.

Alternatively, Priselac seeks remand under CAFA's discretionary jurisdiction exception. See [D.E. 27] ¶¶ 13–21; see also [D.E. 28] 18–26. Under CAFA's discretionary exception:

> [a] district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction ... over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of—
>
> > (A) whether the claims asserted involve matters of national or interstate interest;
> >
> > (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> >
> > (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> >
> > (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> >
> > (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> >
> > (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).

17

In order to remand the action under CAFA's discretionary exception, Priselac initially must satisfy two prerequisites: (1) greater than one-third but less than two-thirds of members of the putative classes in the aggregate must be citizens of North Carolina, and (2) the primary defendants must be citizens of North Carolina. See id.; Dutcher, 840 F.3d at 1194–95; Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc., 485 F.3d 804, 811 (5th Cir. 2007). The second prerequisite "requires a showing that all primary defendants are citizens of the relevant state." Dutcher, 840 F.3d at 1194–95 (emphasis in original).

Priselac contends that even though over two-thirds of the class are citizens of North Carolina, the action still meets CAFA's discretionary exception. See [D.E. 28] 19. Defendants disagree. See [D.E. 29] 11–12. Defendants also argue that the exception does not apply because the primary defendants, namely, the corporate defendants, are not citizens of North Carolina. See id. at 12.

Priselac has failed to satisfy the citizenship prerequisites necessary to invoke the discretionary exception. The putative class does not contain one-third to two-thirds citizens of North Carolina. Rather, North Carolina citizens comprise well over two-thirds of the entire putative class (if not the entire putative class). See Compl. ¶¶ 2, 181; see also [D.E. 27] ¶ 4; [D.E. 28] 3–5.[5] Second, not all primary defendants are citizens of North Carolina. The corporate defendants are primary defendants

---

[5] Priselac contends that a plaintiff class consisting of over two-thirds citizens from the forum state still qualifies for CAFA's discretionary exception. See [D.E. 28] 19 (citing Cook v. S.C. Pub. Serv. Auth., No. 6:19-cv-03285-TLW, 2020 WL 869741, at *7 (D.S.C. Jan. 21, 2020) (unpublished)). Cook, however, does not stand for that proposition. The Cook court reasoned that "because 82% of the class has or had a South Carolina billing addresses, there is a large enough margin of error to safely conclude by a preponderance of the evidence that two-thirds, or at least one-third, of the class members are citizens of South Carolina." Cook, 2020 WL 869741, at *7. To the extent Cook suggests that courts can disregard the two-thirds requirement, the court declines to follow that suggestion.

18

and are Delaware citizens. See Compl. ¶¶ 3–8. Thus, CAFA's discretionary exception does not warrant remand.

Priselac also argues that the six statutory factors favor remanding the action. See [D.E. 27] ¶¶ 14–20; [D.E. 28] 19–26. Defendants respond that the court need not reach the six factors because Priselac cannot satisfy the preliminary citizenship requirements for the exception. See [D.E. 29] 11–12.

The court agrees with defendants. Because Priselac failed to make the initial showing necessary to invoke the discretionary exception, the court declines to address the six factors. Accordingly, the court declines to remand the action to state court under CAFA's discretionary exception.

### III.

In sum, the court DENIES plaintiff's motion to remand [D.E. 27]. Plaintiff shall respond to the motion to dismiss [D.E. 13] no later than October 20, 2021.

SO ORDERED. This 20 day of September, 2021.

JAMES C. DEVER III
United States District Judge