IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:20-CV-190-D

TAMMIE PRISELAC, individually and )
on behalf of all others similarly situated, )
)
Plaintiff, )
)
v. )                                    **ORDER**
)
THE CHEMOURS COMPANY, et al., )
)
Defendants. )

On September 15, 2020, Tammie Priselac ("Priselac" or "plaintiff"), individually and on

behalf of all others similarly situated, filed a putative class action in Bladen County Superior Court

against The Chemours Company, The Chemours Company FC, LLC, E.I. DuPont de Nemours and

Company, Inc., E.I. duPont Chemical Corporation, Corteva, Inc., DuPont de Nemours, Inc., Ellis H.

McGaughy, Brian D. Long, and Michael E. Johnson (collectively, "defendants"). See Compl. [D.E.

1-1] 12–83. On October 6, 2020, defendants removed the action to this court based on diversity

jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) [D.E. 1]. On September

20, 2021, the court denied Priselac's motion to remand [D.E. 49].

On October 13, 2020, defendants moved to dismiss the complaint for failure to state a claim

under Federal Rule of Civil Procedure 12(b)(6) [D.E. 13] and filed a memorandum in support [D.E.

14]. On November 8, 2021, Priselac responded in opposition [D.E. 52].[1] On December 6, 2021,

defendants replied [D.E. 54]. As explained below, the court grants in part and denies in part

defendants' motion to dismiss.

---

[1] The court grants Priselac's motion to file in excess of the word limit [D.E. 53].

This case concerns the alleged release of perfluorinated chemicals ("PFCs"), also known as perfluoroalkyl substances ("PFAS"), from the Fayetteville Works Site, which is located southeast of Fayetteville, North Carolina. PFCs include HFPO dimer acid ("GenX"), C8, and other chemicals. Priselac alleges defendants have released PFCs into the Cape Fear River and surrounding air, soil, and groundwater through their operations at the Fayetteville Works Site, thereby contaminating her property and drinking water. Priselac lived in Wilmington, North Carolina, from 2009 to 2019. While living there, she drank water supplied by the Cape Fear Public Utility Authority, which draws water for its customers from the Cape Fear River. See Compl. ¶ 2; see also Priselac v. Chemours Co., No. 7:20-CV-190-D, 2021 WL 4303768, at *1–2 (E.D.N.C. Sept. 20, 2021); Kinlaw v. Chemours Co. FC, LLC, No. 7:20-CV-188-D, 2021 WL 4497151, at *1–2 (E.D.N.C. Sept. 30, 2021) (unpublished) (involving similar factual allegations by different plaintiffs against the same defendants); Order at 2–8, Lohr v. Chemours Co. FC, LLC, No. 7:20-CV-189-D (E.D.N.C. Sept. 27, 2021), [D.E. 118] (same); Nix v. Chemours Co. FC, LLC, 456 F. Supp. 3d 748, 754–58 (E.D.N.C. 2019) (same); Dew v. E.I. du Pont de Nemours & Co., No. 5:18-CV-73-D, 2019 WL 13117100, at *1–3 (E.D.N.C. Apr. 17, 2019) (unpublished) (same).

Priselac, seeking to represent herself and a class of others similarly situated, alleges numerous claims, including: (1) trespass, (2) private nuisance, (3) negligence, (4) negligent failure to warn, (5) violation of the North Carolina Uniform Voidable Transfer Act ("NCUVTA"), N.C. Gen. Stat. §§ 39-23.1, et seq., (6) unjust enrichment, (7) civil conspiracy, and (8) battery. See Compl. ¶¶ 196–266. Priselac alleges that because of defendants' actions, she suffered an "increased risk of illness, disease, and disease process," which results in a present need for "the cost of diagnostic testing for the early detection of such illness, disease, or disease process." Id. ¶¶ 171–79. Priselac seeks

compensatory and punitive damages, money to pay for diagnostic testing and medical monitoring, disgorgement of profits obtained by unjust enrichment, and attorneys' fees. See id. at 82–83. Defendants move to dismiss all of Priselac's claims under Rule 12(b)(6), except for the claim under the NCUVTA, which they do not address. See [D.E. 13]. Defendants also seek the dismissal of Long, McGaughy, and Johnson as defendants. See id.

## II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a party's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,

3

637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Defendants' motion to dismiss requires the court to consider North Carolina state law claims. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

4

304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

## A.

The primary injury Priselac alleges is the present need for diagnostic testing and medical monitoring in light of the increased risk of illness and disease caused by defendants' alleged contamination of the Cape Fear River. See Compl. ¶¶ 171–79; [D.E. 52] 8–18. Defendants argue medical monitoring is not cognizable as a cause of action or element of damages under North Carolina law absent a present physical injury. See [D.E. 14] 10–11; [D.E. 54] 2–4.

Under North Carolina law, medical monitoring is not cognizable as an independent cause of action or an element of damages absent a present physical injury. In Curl v. American Multimedia, Inc., the North Carolina Court of Appeals rejected an independent cause of action for medical monitoring absent a present physical injury. See 187 N.C. App. 649, 655–57, 654 S.E.2d 76, 80–82 (2007); see also Nix, 456 F. Supp. 3d at 764–65. The Curl court also rejected medical monitoring as an element of damages. See Curl, 187 N.C. App. at 657, 654 S.E.2d at 81; see also Nix, 456 F. Supp. 3d at 764–65. The North Carolina Court of Appeals concluded that recognizing "the increased risk of disease as a present injury, or the cost of medical monitoring as an element of damages, will present complex policy questions . . . within the purview of the legislature and not the courts." Curl, 187 N.C. App. at 657, 654 S.E.2d at 81. The court explicitly "decline[d] to create the new causes of action or type of damages." Id., 654 S.E.2d at 81. As this court recognized in Nix, the court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Nix, 456 F. Supp. 3d at 765 (quoting Toloczko, 728 F.3d at 398). Accordingly, without a present physical injury, medical monitoring because of

5

increased risk of illness is not cognizable as an independent cause of action or an element of damages under North Carolina law. The court declines to hold otherwise and thereby create or expand North Carolina public policy.

In opposition, Priselac argues she has the "persuasive data" the court lacked in Nix that shows the Supreme Court of North Carolina would decide the issue differently than the North Carolina Court of Appeals did in Curl. See [D.E. 52] 16. Priselac cites background principles from the Restatement (Second) of Torts and cases from other jurisdictions that have recognized medical monitoring as a cause of action or an element of damages. See id. at 10–16. Priselac also analogizes to areas of North Carolina tort law that do not require a plaintiff to show a present physical injury as a prerequisite to recovery and argues the Supreme Court of North Carolina would not require a present physical injury in medical monitoring cases either. See id. at 16–17.

Priselac's arguments downplay the numerous jurisdictions that, like North Carolina, do not recognize medical monitoring as an independent cause of action or an element of damages. See Bell v. 3M Co., 344 F. Supp. 3d 1207, 1223 (D. Colo. 2018) (collecting numerous cases on both sides of the issue); Dougan v. Sikorksy Aircraft Corp., 337 Conn. 27, 38 n.13, 251 A.3d 583, 591 n.13 (2020) (same). The caselaw is sufficiently split on this issue that "[i]t would be disingenuous for this Court to attempt to divine some sort of overwhelming trend resulting from these mixed decisions." Bell, 344 F. Supp. 3d at 1223. These mixed decisions illustrate the significant legal and policy considerations that exist on both sides of the debate. See, e.g., Metro-North Commuter R.R. v. Buckley, 521 U.S. 424, 440–44 (1997). The Curl court recognized the complex policy decisions involved and concluded that the North Carolina General Assembly should make those decisions. See Curl, 187 N.C. App. at 656, 654 S.E.2d at 81 ("The excelsior cry for a better system in order to keep step with the new conditions and spirit of a more progressive age must be made to the

6

Legislature, rather than to the courts." (quotation omitted)). Moreover, the court is not aware of, and the parties have not cited, any North Carolina appellate decision casting doubt on Curl. Accordingly, the court follows Curl's holding that North Carolina law does not recognize medical monitoring as an independent cause of action or an element of damages absent a present physical injury. See Day & Zimmermann, Inc., 423 U.S. at 4 ("A federal court in a diversity case is not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits.").

Attempting to circumvent Curl, Priselac argues she suffers "the present injury of the expense of diagnostic testing for the early detection of disease." [D.E. 52] 11 (cleaned up). But Priselac does not allege that she has actually paid for diagnostic testing and medical monitoring—i.e., she has not yet suffered an economic loss. Instead, Priselac alleges she has the present need to pay for diagnostic testing. See Compl. ¶¶ 171–79; [D.E. 52] 11–16 (arguing "the present need to incur the cost of diagnostic testing" is an injury). The present need for diagnostic testing is inextricably linked to Priselac's allegations that she suffers "increased risk of illness, disease, and disease processes." Compl. ¶ 174. But "the increased risk of disease as a present injury" is precisely the type of injury the Curl court declined to recognize. Curl, 187 N.C. App. at 657, 654 S.E.2d at 81. Thus, to the extent Priselac seeks damages to pay for diagnostic testing and medical monitoring, the court dismisses her claims.

## B.

Defendants argue Priselac failed to plausibly allege a trespassing claim. See [D.E. 14] 16. Under North Carolina law, "trespass is a wrongful invasion of the possession of another." Singleton v. Haywood Elec. Membership Corp., 357 N.C. 623, 627, 588 S.E.2d 871, 874 (2003) (quotation omitted); see State ex rel. Bruton v. Flying "W" Enters., Inc., 273 N.C. 399, 415, 160 S.E.2d 482,

7

493 (1968); Shepard v. Bonita Vista Props., L.P., 191 N.C. App. 614, 631, 664 S.E.2d 388, 399 (2008) (Tyson, J., concurring in part and dissenting in part), aff'd, 363 N.C. 252, 675 S.E.2d 332 (2009) (per curiam); Elec. World, Inc. v. Barefoot, 153 N.C. App. 387, 393, 570 S.E.2d 225, 230 (2002); cf. Matthews v. Forrest, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952) ("The essence of a trespass to [real property] is the disturbance of possession."). A claim of trespass to real property requires "(1) possession of the property by plaintiff when the alleged trespass was committed; (2) an unauthorized entry by defendant; and (3) damage to plaintiff." Singleton, 357 N.C. at 627, 588 S.E.2d at 874 (quotation omitted); see Fordham v. Eason, 351 N.C. 151, 153, 521 S.E.2d 701, 703 (1999); Shepard, 191 N.C. App. at 631, 664 S.E.2d at 399; see, e.g., Elec. World, Inc., 153 N.C. App. at 393, 570 S.E.2d at 230; Jordan v. Foust Oil Co., 116 N.C. App. 155, 166, 447 S.E.2d 491, 498 (1994). Because "every unauthorized entry on land in the peaceable possession of another constitutes a trespass, without regard to the degree of force used and irrespective of whether actual damage is done," a complaint "states a cause of action for the recovery of nominal damages for a properly pleaded trespass to [real property] even if it contains no allegations setting forth the character and amount of damages." Matthews, 235 N.C. at 283, 69 S.E.2d at 555; see Keziah v. Seaboard Air Line R.R., 272 N.C. 299, 311, 158 S.E.2d 539, 548 (1968); Hutton & Bourbonnais v. Cook, 173 N.C. 496, 499, 92 S.E. 355, 356 (1917); Hawkins v. Hawkins, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991) (noting that trespass to real property is among the torts that "do not include actual damage as an essential element"), aff'd, 331 N.C. 743, 417 S.E.2d 447 (1992).

Viewing the complaint in the light most favorable to Priselac, Priselac plausibly alleges a trespass claim. Priselac alleges she possessed property in Wilmington, North Carolina, and that defendants knowingly or purposefully discharged chemicals that intentionally and unauthorizedly entered her property. See Compl. ¶¶ 1, 74–102; [D.E. 52] 23–24; see also Nix, 456 F. Supp. 3d at

8

764; Dew, 2019 WL 13117100, at *6. Finally, Priselac has plausibly alleged nominal damages. See Nix, 456 F. Supp. 3d at 764; Dew, 2019 WL 13117100, at *6. Thus, the court denies defendants' motion to dismiss Priselac's trespass claim.

## C.

Defendants argue Priselac failed to plausibly allege a private nuisance claim. See [D.E. 14] 13–16. Under North Carolina law, plaintiffs seeking to recover for a private nuisance must show a substantial and unreasonable interference with the use and enjoyment of their property. See Grant v. E.I. du Pont de Nemours & Co., No. 4:91-CV-55-H, 1995 WL 18239435, at *5 (E.D.N.C. July 14, 1995) (unpublished), aff'd sub nom. Stancill v. E.I. du Pont de Nemours & Co., 91 F.3d 133, 1996 WL 267327 (4th Cir. 1996) (per curiam) (unpublished table decision); Kent v. Humphries, 303 N.C. 675, 677, 281 S.E.2d 43, 45 (1981); Shadow Grp., LLC v. Heather Hills Home Owners Ass'n, 156 N.C. App. 197, 200, 579 S.E.2d 285, 287 (2003); Jordan, 116 N.C. App. at 167, 447 S.E.2d at 498. An interference is substantial when it results in significant annoyance, some material physical discomfort, or injury to plaintiffs' health or property. See Watts v. Pama Mfg. Co., 256 N.C. 611, 617–18, 124 S.E.2d 809, 813–14 (1962); Pake v. Morris, 230 N.C. 424, 426, 53 S.E.2d 300, 301 (1949); Duffy v. E.H. & J.A. Meadows Co., 131 N.C. 31, 34, 42 S.E. 460, 461 (1902); Shadow Grp., 156 N.C. App. at 200, 579 S.E.2d at 287. Unreasonableness is a question of fact judged by an objective standard that balances the relative benefit to defendant against the harm to plaintiff. See Pendergrast v. Aiken, 293 N.C. 201, 217, 236 S.E.2d 787, 797 (1977) (listing factors); Watts, 256 N.C. at 618, 124 S.E.2d at 814 (same); Rainey v. St. Lawrence Homes, Inc., 174 N.C. App. 611, 613–14, 621 S.E.2d 217, 220 (2005) (same).

Nuisance law differentiates between private and public nuisances. A defendant creates a public nuisance when the nuisance interferes with the "rights and privileges common to the public

9

or to all the people of the community." Barrier v. Troutman, 231 N.C. 47, 49, 55 S.E.2d 923, 925 (1949); see Twitty v. State, 85 N.C. App. 42, 49, 354 S.E.2d 296, 301 (1987). A plaintiff must show "unusual and special damage" to bring a public nuisance claim. Barrier, 231 N.C. at 49, 55 S.E.2d at 925; see Hampton v. N.C. Pulp Co., 223 N.C. 535, 543–44, 27 S.E.2d 538, 543–44 (1943); Neuse River Found., Inc. v. Smithfield Foods, Inc., 155 N.C. App. 110, 115–16, 574 S.E.2d 48, 52–53 (2002), abrogated on other grounds by Comm. to Elect Dan Forest v. Emps. Pol. Action Comm., 376 N.C. 558, 853 S.E.2d 698 (2021). In contrast, a defendant creates a private nuisance "where the nuisance results from violation of private rights and are such as to constitute a private wrong by injuring property or health, or where by the use of structures and permitted conditions a nuisance has been created, causing annoyance to the individual and disturbing him in the possession of his premises and rendering the use and occupancy thereof uncomfortable, injuriously affecting the peace and menacing the health and safety of his home." Barrier, 231 N.C. at 49–50, 55 S.E.2d at 925. Distinguishing the two "is not simply a matter of tallying the number of people affected by a defendant's allegedly tortious conduct . . . [but] depends on the nature of the interest affected by the defendant's conduct." Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 96 (4th Cir. 2011).

Viewing the complaint in the light most favorable to Priselac, Priselac fails to plausibly allege a private nuisance claim. Priselac, and the class members she seeks to represent, get their water from the Cape Fear Public Utility Authority. See Compl. ¶¶ 2, 181. Priselac shares her interest in clean water from the utility company equally with members of the general public who also get their water from the Cape Fear Public Utility Authority. See id. ¶ 83 (alleging the Cape Fear Public Utility Authority serves more than 100,000 North Carolina residents); id. ¶ 183 (alleging the number of properties covered in the lawsuit "exceeds five thousand"); see also Hampton, 223 N.C. at 544, 27 S.E.2d at 544 ("To deny private redress, the incidence of infraction must be as uniformly

10

public as the right which is exclusively committed to public protection."). Thus, even though defendants' alleged contamination of the Cape Fear River and the surrounding air, soil, and groundwater negatively affects Priselac's use and enjoyment of her private property, the interest affected is a public interest. See Rhodes, 636 F.3d at 96 ("The fact that the water eventually was pumped into private homes did not transform the right interfered with from a public right to a private right."). Thus, Priselac alleges defendants invaded a public interest and fails to state a private nuisance claim.

In contrast, in Dew, this court denied a motion to dismiss a private nuisance claim when the defendants allegedly contaminated plaintiffs' private wells, not a public utility. See Dew, 2019 WL 13117100, at *2, 5–6; see also Rhodes, 636 F.3d at 96–97 ("[W]hen a release of pollutants directly affects a municipal water supply and does not interfere with any private water source, such as a well drilled on private property, the presence of the pollutants in the public water supply will not support a private nuisance claim.").

Priselac alleges the invasion of a public, not a private, interest and thus fails to state a private nuisance claim. Even if the court construed Priselac's allegations as a public nuisance claim, Priselac's alleged injuries—i.e., the need for medical monitoring and diagnostic testing, "disruption of water supplies, increased angst, and inconvenience of installing home filtration systems"—is not unusual or special damage compared to other members of the public who also get their water from the public utility. Compl. ¶¶ 171–79, 206. Thus, the court dismisses the claim.[3]

_____

[3] Although in Nix the court allowed the private nuisance claim to proceed, the plaintiffs did not all get their water from a single source. Some got their water from the Cape Fear Public Utility Authority and at least one plaintiff had a private well. See Amended Complaint at 37–38, Nix, 456 F. Supp. 3d 748 (E.D.N.C. Jan. 31, 2018), [D.E. 53]. Whether the private nuisance claim in that case will survive defendants' inevitable motion for summary judgment is an issue for another day.

11

**D.**

Defendants argue Priselac failed to plausibly state claims for negligence and negligent failure to warn. See [D.E. 14] 12–13. Under North Carolina law, "[n]egligence is the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." Dunning v. Forsyth Warehouse Co., 272 N.C. 723, 725, 158 S.E.2d 893, 895 (1968); Moore v. Moore, 268 N.C. 110, 112, 150 S.E.2d 75, 77 (1966); Coulter v. Catawba Cnty. Bd. of Educ., 189 N.C. App. 183, 185, 657 S.E.2d 428, 430 (2008). To state an actionable claim, a plaintiff must plausibly allege that "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 93–94, 693 S.E.2d 149, 156 (2010); see Ward v. Carmona, 368 N.C. 35, 37, 770 S.E. 2d 70, 72 (2015); Bridges v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013); Fussell v. N.C. Farm Bureau Mut. Ins. Co., 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010). As for duty, defendants owed plaintiff a duty to exercise ordinary care. See Fussell, 364 N.C. at 226, 695 S.E.2d at 440. "The duty of ordinary care is no more than a duty to act reasonably" concerning "causes of injury that were reasonably foreseeable and avoidable through the exercise of due care." Id., 695 S.E.2d at 440.

Assuming without deciding that Priselac plausibly alleges that defendants breached a duty of care they owed to her, Priselac does not plausibly allege an injury stemming from defendants' negligence and negligent failure to warn. Besides the increased risk of disease causing the need for medical monitoring and diagnostic testing, which is not a cognizable injury, Priselac cites no other injury that defendants caused her. See [D.E. 52] 21 (conceding regarding the negligence and negligent failure to warn claims that Priselac's "pled injury in this case is the cost of the diagnostic

testing mad[e] medically necessary by exposure to Defendants' toxins"). These allegations, without more, do not plausibly allege a cognizable injury. Thus, Priselac does not plausibly allege claims for negligence and negligent failure to warn.

In contrast, the plaintiffs in Nix alleged specific harms allegedly caused by defendants' negligence. For example, the plaintiffs alleged harms from ulcerative colitis and diverticulitis diagnoses, costs of buying bottled water to avoid drinking contaminated water, and injuries to property from the need to install water filtration systems and to replace pipes, fittings, and fixtures. See Nix, 456 F. Supp. 3d at 758; see also Dew, 2019 WL 13117100, at *3 (alleging plaintiffs must drink bottled water due to well-water contamination). Unlike in Nix, the only injury Priselac pleaded in her negligence and negligent failure to warn claims is the need for medical monitoring and diagnostic testing. See Compl. ¶¶ 220, 228, 235. Priselac has not alleged she bought bottled water to avoid drinking tap water, that she needed to clean or replace her pipes, or that she installed a filtration system in her residence. Moreover, merely drinking the water does not suffice to allege an injury. Cf. Rhodes, 636 F.3d at 95 ("The presence of PFOA in the public water supplies or in the plaintiffs' blood does not, standing alone, establish harm or injury for purposes of proving a negligence claim under West Virginia law. In such situations, a plaintiff also must produce evidence of a detrimental effect to the plaintiffs' health that actually has occurred or is reasonably certain to occur due to a present harm."). Accordingly, the court dismisses Priselac's negligence and negligent failure to warn claims.[4]

_____

[4] Alternatively, the court dismisses the negligent failure to warn claim because North Carolina law only recognizes a limited duty to warn owed by landowners to lawful visitors on their property and by manufacturers to provide adequate warnings or instructions concerning products. Priselac does not plausibly allege either scenario. See Dew, 2019 WL 13117100, at *9 (collecting cases and arriving at the same conclusion on materially indistinguishable facts).

13

E.

Defendants contend that Priselac fails to state an unjust enrichment claim. See [D.E. 14] 17. "[A] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 555–56 (1988) (quotation omitted). Under North Carolina law, to recover on an unjust enrichment claim, plaintiffs must prove (1) that they conferred a benefit on another party, (2) that the other party consciously accepted the benefit, and (3) that plaintiffs did not confer the benefit gratuitously or officiously (i.e., not conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances). See id., 369 S.E.2d at 556; Lake Toxaway Cmty. Ass'n v. RYF Enters., LLC, 226 N.C. App. 483, 490, 742 S.E.2d 555, 561 (2013); Se. Shelter Corp. v. BTU, Inc., 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002). A plaintiff that establishes an unjust enrichment claim is entitled to "a restitution-type recovery" and need not have "actual damages." Seraph Garrison, LLC ex rel. Garrison Enters., Inc. v. Garrison, 247 N.C. App. 115, 130, 787 S.E.2d 398, 410 (2016).

It would expand North Carolina public policy to find that Priselac conferred a benefit on defendants by defendants allegedly discharging chemicals onto Priselac's property. See Nix, 456 F. Supp. 3d at 764; [D.E. 52] 24 ("understand[ing] the Court's prior order in Nix" could apply here and "preserv[ing] the issue"); cf. Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co., 91 F. Supp. 3d 940, 984–86 (S.D. Ohio 2015). Thus, the court dismisses Priselac's unjust enrichment claim.

F.

Defendants argue Priselac failed to state a civil conspiracy claim. See [D.E. 14] 17–18. To state a civil conspiracy claim, a plaintiff must plausibly allege: "(1) an agreement between two or

14

more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." Strickland v. Hedrick, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) (quotation omitted); see State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 444, 666 S.E.2d 107, 115 (2008); Elec. World, Inc., 153 N.C. App. at 394; 570 S.E.2d at 230; Privette v. Univ. of N.C. at Chapel Hill, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989); see also Shinaberry v. Town of Murfreesboro, No. 2:17-CV-7-D, 2018 WL 1801417, at *6 (E.D.N.C. Apr. 16, 2018) (unpublished). North Carolina law requires an overt act in furtherance of the conspiracy. See Dove v. Harvey, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005); see also Shinaberry, 2018 WL 1801417, at *6. Civil conspiracy is not an independent cause of action but must be premised on some underlying act. See Harris v. Matthews, 361 N.C. 265, 273 n.2, 643 S.E.2d 566, 571 n.2 (2007); Piraino Bros., LLC v. Atl. Fin. Grp., Inc., 211 N.C. App. 343, 350, 712 S.E.2d 328, 333–34 (2011); Strickland, 194 N.C. App. at 19, 669 S.E.2d at 73. For example, when underlying tort claims do not survive a motion for summary judgment, a civil conspiracy claim cannot either. See Piraino Bros., 211 N.C. App. at 350, 712 S.E.2d at 333–34.

Taking as true the allegations in the complaint and all reasonable inferences drawn therefrom, Priselac has nudged her civil conspiracy claim beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79. Priselac's underlying trespass claim survives defendants' motion to dismiss. Moreover, Priselac plausibly alleges an agreement between two or more individuals in defendants' companies to violate environmental laws and that those violations at least nominally harm Priselac, as her trespass claim alleges. See, e.g., Compl. ¶¶ 9–19, 47–49, 75–98. Thus, the court denies defendants' motion to dismiss Priselac's civil conspiracy claim.

15

G.

Defendants argue Priselac fails to state a claim for battery. See [D.E. 14] 18–19. "An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow." Dickens v. Puryear, 302 N.C. 437, 444–45, 276 S.E.2d 325, 330 (1981). Put differently, "[a] 'battery' is the offensive touching of the person of another without his/her consent." City of Greenville v. Haywood, 130 N.C. App. 271, 275, 502 S.E.2d 430, 433 (1998). To state a battery claim, a plaintiff must plausibly allege (1) intent, (2) harmful or offensive contact, (3) causation, and (4) lack of privilege. See Sargent v. Edwards, 257 N.C. App. 540, 808 S.E.2d 927, 2018 WL 414332, at *6 (2018) (unpublished table decision); Wilkerson v. Duke Univ., 229 N.C. App. 670, 675, 748 S.E.2d 154, 159 (2013); Hawkins, 101 N.C. App. at 533, 400 S.E.2d at 475. A plaintiff need not show actual damage to state a battery claim. See Hawkins, 101 N.C. App. at 533, 400 S.E.2d at 475.

"The intent required to prove battery is intent to act, i.e., the intent to cause harmful or offensive contact, not the intent to injure." Russ v. Great Am. Ins. Cos., 121 N.C. App. 185, 188, 464 S.E.2d 723, 725 (1995). A plaintiff may demonstrate the requisite level of intent by showing constructive intent. "Constructive intent to injure exists where conduct threatens the safety of others and is so reckless or manifestly indifferent to the consequences that a finding of willfulness and wantonness equivalent in spirit to actual intent is justified." Pleasant v. Johnson, 312 N.C. 710, 715, 325 S.E.2d 244, 248 (1985); see Abernathy v. Consol. Freightways Corp. of Del., 321 N.C. 236, 241, 362 S.E.2d 559, 562 (1987) (stating the conduct must be "so reckless or manifestly indifferent to the consequences that it may be found equivalent in spirit to actual intent to inflict injury"); Lynn v. Burnette, 138 N.C. App. 435, 439–40, 531 S.E.2d 275, 279 (2000). Wanton and reckless negligence

16

may suffice. See Pleasant, 312 N.C. at 715, 325 S.E.2d at 248; Lynn, 138 N.C. App. at 439–40, 531 S.E.2d at 279.

In the context of a battery claim, one consideration that makes willful, wanton, and reckless conduct "equivalent in spirit to actual intent to inflict injury" is whether the defendant directed the conduct specifically at the plaintiff. Abernathy, 321 N.C. at 241, 362 S.E.2d at 562. This consideration is important because "in a crowded world, a certain amount of personal contact is inevitable must be accepted" without each contact giving rise to an action for battery. McCracken v. Sloan, 40 N.C. App. 214, 217, 252 S.E.2d 250, 252 (1979).

Two decisions illustrate this principle. In Pleasant, the Supreme Court of North Carolina considered whether a plaintiff who had received benefits under the Workers' Compensation Act could file a separate action against the co-worker who caused the injury based on a theory of constructive intent. See Pleasant, 312 N.C. at 711–13, 325 S.E.2d at 246–47. In that case, the defendant intended to prank the plaintiff by driving his truck close to the plaintiff, without hitting him, while honking to scare the plaintiff. See id. at 711, 325 S.E.2d at 246. The defendant, however, hit the plaintiff with the truck, injuring the plaintiff's knee. See id., 325 S.E.2d at 246. The plaintiff recovered under the Workers' Compensation Act and then sued the defendant for negligence. See id., 325 S.E.2d at 246. At that time, an employee who received benefits under the Workers' Compensation Act only had an actionable lawsuit for intentional injuries, not negligence. See id. at 713, 325 S.E.2d at 247. Relying on constructive intent, the Supreme Court of North Carolina held the plaintiff could proceed in "bringing an action for the defendant's willful and wanton negligence," because he sufficiently alleged an intentional tort. Id. at 714, 717, 325 S.E.2d at 247, 249. Among other possibly relevant factors, the defendant had directed his willful and wanton conduct at the plaintiff specifically.

17

In contrast, in Abernathy, the Supreme Court of North Carolina held that the defendant's conduct amounted only to ordinary negligence and could not support plaintiff's constructive intent argument. There, the defendant used a tow motor to move some freight even though it had no brakes. See Abernathy, 321 N.C. at 237–38, 362 S.E.2d at 560. The defendant had seen other employees put the tow motor in reverse to stop it without a brake and thought he could do so as well. See id., 362 S.E.2d at 560. While driving, the defendant was unable to stop in time due to mechanical failures and hit a float on a loading dock. See id., 362 S.E.2d at 560. The float pinned the plaintiff's leg against an iron post, fracturing his leg. See id., 362 S.E.2d at 560. The Supreme Court of North Carolina held that the decision to use a brakeless tow motor constituted ordinary negligence and did not amount to a constructive intent to injure the plaintiff. See id. at 236, 240–41, 362 S.E.2d at 559, 562. Although the Supreme Court of North Carolina based its decision on numerous considerations, the defendant in Abernathy had not directed his conduct at the plaintiff specifically but was merely attempting to do his job as his supervisor had assigned.

Decisions from the North Carolina Court of Appeals comport with this distinction between Pleasant and Abernathy. For example, in Vernon v. Barrow, the defendant shot at the floor near the plaintiff's feet to intimidate him into leaving the defendant's bar. See 95 N.C. App. 642, 642, 383 S.E.2d 441, 441–42 (1989). One bullet ricocheted off the floor and hit the plaintiff. See id., 383 S.E.2d at 442. The North Carolina Court of Appeals held that the conduct raised questions of both assault and battery and negligence. See id., 95 N.C. App. at 643, 383 S.E.2d at 442; see also Lynn, 138 N.C. App. at 436–43, 531 S.E.2d at 277–81 (same); Key v. Burchette, 134 N.C. App. 369, 369–72, 517 S.E.2d 667, 668–69 (1999) (same). In Lail v. Woods, the North Carolina Court of Appeals stated that a child throwing a rock at another child during a rock fight raised a question of

18

assault and battery but not negligence. See 36 N.C. App. 590, 590–92, 244 S.E.2d 500, 501–02 (1978). In these cases, the defendant's conduct was in some manner directed at the plaintiff.

In contrast, in McCracken, the plaintiff sued for assault and battery when a coworker smoked a cigar in his office during two meetings and the plaintiff inhaled some of the smoke while in the co-worker's office. The plaintiff had a serious smoke allergy. The defendant knew of the allergy but smoked anyway. The North Carolina Court of Appeals held that merely inhaling second-hand smoke did not suffice to state a claim for battery without "evidence of some physical injury." McCracken, 40 N.C. App. at 215–18, 252 S.E.2d at 251–52; cf. Leichtman v. WLW Jacor Commc'ns., Inc., 92 Ohio App. 3d 232, 235–36, 634 N.E.2d 697, 699 (1994) (distinguishing McCracken when the defendant intentionally blew smoke into the plaintiff's face).

Viewing the complaint in the light most favorable to Priselac, Priselac's allegations do not plausibly state a battery claim. Assuming without deciding that defendants acted willfully and wantonly, their conduct is not so reckless as to be "equivalent in spirit to actual intent to inflict injury." Abernathy, 321 N.C. at 241, 362 S.E.2d at 562; Pleasant, 312 N.C. at 715, 325 S.E.2d at 248. Of course, Priselac alleges that defendants knew the Fayetteville Works Site was releasing chemicals into the Cape Fear River, knew the chemicals could be toxic, and "knew that exposure to Plaintiff and the class was substantially certain to occur." [D.E. 52] 27–28 (summarizing factual allegations). Nonetheless, Priselac alleges no facts indicating defendants directed their conduct toward her. Although Priselac plausibly alleges that defendants knew the PFCs would enter the general public's drinking water, see id., that knowledge does not plausibly allege that defendants were directing their conduct at Priselac and the class members. Instead, the allegations show defendants' conduct was directed at operating their business and that they had knowledge of the substantial safety risks incidental to the manner in which they did so, similar to the defendant in

Abernathy. Thus, without directing conduct at Priselac, the facts Priselac alleges are closer to ordinary negligence than to willful and wanton negligence so serious that it is in spirit equivalent to actual intent. Thus, Priselac fails to state a battery claim, and the court dismisses the battery claim.[5]

### III.

Defendants move to dismiss Long, McGaughy, and Johnson as defendants. Priselac alleges trespass, private nuisance, negligence, negligent failure to warn, and battery claims against Long, McGaughy, and Johnson. The only remaining claim is the trespass claim.

A corporate officer may be personally liable for torts committed in the course and scope of his employment. See Woodson v. Rowland, 329 N.C. 330, 348, 407 S.E.2d 222, 232–33 (1991); White v. Collins Bldg., Inc., 209 N.C. App. 48, 56, 704 S.E.2d 307, 312 (2011). Generally, a corporate officer "is not liable for the torts of the corporation merely by virtue of his office." Wolfe v. Wilmington Shipyard, Inc., 135 N.C. App. 661, 670, 522 S.E.2d 306, 312–13 (1999) (quotation omitted); see Kelley v. Enviva, LP, No. 7:14-CV-126-BO, 2015 WL 500473, at *3 (E.D.N.C. Feb. 4, 2015) (unpublished); Folwell v. Sanchez Hernandez, No. 1:01CV01061, 2003 WL 21418098, at *5 (M.D.N.C. May 7, 2003) (unpublished); United Artists Recs., Inc. v. E. Tape Corp., 19 N.C. App. 207, 215, 198 S.E.2d 452, 457 (1973). In order "to overcome the presumption against officer

---

[5] Priselac relies on Restatement (Second) of Torts § 18, comment c for the proposition that an actor commits a battery if "the actor intend[s] to cause the other, directly or indirectly, to come in contact with a foreign substance in a manner which the other will reasonably regard as offensive." [D.E. 52] 26. Although North Carolina courts have relied on the Restatement for tort principles, and offensive contact is actionable as battery in North Carolina, no North Carolina courts have adopted section 18, comment c. The court is aware of only one North Carolina appellate decision that cites this comment in the Restatement, and the North Carolina Court of Appeals superseded that decision on rehearing and did not cite the Restatement in its second opinion. See Britt v. Hayes, 140 N.C. App. 262, 266, 535 S.E.2d 892, 895 (2000), superseded on rehearing, 142 N.C. App. 190, 541 S.E.2d 761 (2001). Moreover, in Rhodes, the Fourth Circuit declined to rely on section 18 when the West Virginia courts had "not embraced" it. Rhodes, 636 F.3d at 96. So too here.

liability," plaintiffs must allege "the basis for a tort claim against [an employee] individually." Kelley, 2015 WL 500473, at *3.

"[A]n officer of a corporation can be held personally liable for torts in which he actively participates, even though committed when acting officially." Wolfe, 135 N.C. App. at 670, 552 S.E.2d at 313 (quotation omitted); see Folwell, 2003 WL 21418098, at *5; Wilson v. McLeod Oil Co., 327 N.C. 491, 518, 398 S.E.2d 586, 600 (1990); Taft v. Brinley's Grading Servs., Inc., 225 N.C. App. 502, 520, 738 S.E.2d 741, 752 (2013). "[P]articipation requires active involvement in the tortious conduct; mere awareness or knowledge of the alleged wrongdoing is not enough." Glob. Textile All., Inc. v. TDI Worldwide, LLC, No. 17 CVS 7304, 2018 WL 2721987, at *4 (N.C. Super. Ct. June 5, 2018) (unpublished); see Oberlin Cap., L.P. v. Slavin, 147 N.C. App. 52, 57, 554 S.E.2d 840, 845 (2001).

An employee's involvement in or responsibility for a company's safety policies does not by itself constitute active participation in tortious conduct. See Taft, 225 N.C. App. at 520–21, 738 S.E.2d at 752–53; Wolfe, 135 N.C. App. at 670–71, 522 S.E.2d at 313. In Wolfe, an inspection following a worker's death revealed 60 separate workplace safety violations. See Wolfe, 135 N.C. App. at 664, 522 S.E.2d at 309. Even though the defendant company's president was responsible for implementing health and safety policies, the court held it lacked sufficient evidence to hold the president personally liable. The plaintiff presented no evidence of the president's personal involvement in implementing the safety policies, and the president stated under oath he was not involved. See id. at 671, 522 S.E.2d at 313. In Taft, even though the company's president participated in formulating and implementing company safety policies, the court held that the president's role concerning the policies was not negligent. See Taft, 225 N.C. App. at 520–21, 738 S.E.2d at 752–53.

21

In contrast to <u>Wolfe</u> and <u>Taft, Wilson</u> illustrates conduct constituting active participation in tortious conduct. In <u>Wilson,</u> gasoline leaked from a convenience store and contaminated plaintiffs' wells. <u>See Wilson,</u> 327 N.C. at 500–06, 518, 398 S.E.2d at 589–94, 600. The court held that the corporate officer could be liable because he actively participated in the activities surrounding the delivery and sale of gasoline at the convenience store. <u>See id.</u> at 518, 398 S.E.2d at 600. "He signed the contract . . . to install the tanks on the property," oversaw the business at the property, "signed the papers arranging for deliveries of the gasoline to the property, supervised the account, and was the person contacted about" the gasoline leak. <u>Id.</u>, 398 S.E.2d at 600.

As for Johnson and McGaughy, Priselac plausibly alleges a trespass claim. Trespass requires showing that "the defendant himself, or an object under his control, voluntarily entered, caused to enter or remained present upon plaintiff's property." <u>Rudd v. Electrolux Corp.</u>, 982 F. Supp. 355, 370 (M.D.N.C. 1997); <u>see Jordan,</u> 116 N.C. App. at 166–67, 447 S.E.2d at 498. Here, Priselac plausibly alleges that McGaughy and Johnson controlled operations at the Fayetteville Works Site and, by extension, controlled the chemicals allegedly dumped from the site into the Cape Fear River. These chemicals form the basis of Priselac's trespass claim. Moreover, Priselac plausibly alleges that McGaughy and Johnson actively participated in the tortious conduct giving rise to her trespass claim. For example, both allegedly misrepresented and omitted material information in environmental permit applications concerning the PFC's that allegedly contaminated Priselac's drinking water. <u>See</u> Compl. ¶¶ 16, 48–49; <u>see also</u> Order at 3–4, 16–17, <u>Lohr,</u> 7:20-CV-189-D; [D.E. 52] 33 (recognizing the court's analysis in <u>Lohr</u> could apply here); [D.E. 54] 9–10 (same). Thus, Priselac plausibly alleges that Johnson and McGaughy actively participated in the tortious conduct that Priselac alleges in her trespass claim.

22

As for defendant Long, there "is no possibility that the plaintiff would be able to establish a cause of action" against Long. Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (emphasis omitted). Priselac alleges that Long "directs and manages all plant operations with overall responsibilities for production, maintenance, quality, and other production-related activities," that he "was the designated responsible official . . . . responsible for the reviewing, understanding and abiding by the terms and conditions of any permit issued by the North Carolina Department of Environment and Natural Resources and the NC Department of Environmental Quality" and that he "was in charge of installing pollution control at the Fayetteville [Works] [S]ite." Compl. ¶¶ 13–14 (footnotes omitted). Priselac alleges no affirmative acts such as misrepresenting or omitting information on environmental permits. Rather, Priselac merely alleges that Long managed the plant and was responsible for handling environmental permits. Thus, the court dismisses Long as a defendant. See Order at 3–4, 16–17, Lohr, 7:20-CV-189-D; [D.E. 52] 33 (recognizing the court's analysis in Lohr could apply here); [D.E. 54] 9–10 (same).

## IV.

In sum, the court GRANTS plaintiff's motion to file in excess of the word limit [D.E. 53]. The court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss [D.E. 13]. The court DISMISSES plaintiff's private nuisance, negligence, negligent failure to warn, unjust enrichment, and battery claims. Plaintiff's trespass, civil conspiracy, and NCUVTA claims survive. The court DISMISSES all claims against defendant Long and DISMISSES Long as a defendant.

SO ORDERED. This 28 day of March, 2022.

J. Dever
JAMES C. DEVER III
United States District Judge

23